UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JANE PRICE,

        Plaintiff,

                                    Case Number 09-14171

v.                                   Honorable David M. Lawson

HARTFORD LIFE AND ACCIDENT
INSURANCE CO.,

        Defendant.

_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL DISCOVERY

The plaintiff's motion presently before the Court is to compel discovery in a case to recover

disability benefits under section 502(a)(1)(B) of the Employee Retirement Income Security Act

(ERISA), 29 U.S.C. § 1132(a)(1)(B). As the parties acknowledge, the general rule is that review

of a denial of benefits by a district court is confined to the administrative record developed by the

plan administrator, and therefore no discovery is necessary. *Wilkins v. Baptist Healthcare Sys., Inc.*,

150 F.3d 609, 618 (6th Cir. 1998) (citing *Perry v. Simplicity Engin'g*, 900 F.2d 963, 966 (6th Cir.

1990)). However, where the plaintiff alleges that she has been denied due process by the plan

administrator, or the administrator was burdened with a conflict of interest — issues on which the

administrative record itself would shed no light — circuit precedent permits additional evidence

relevant to those issues to be presented to the district court. *Id.* at 619. A corresponding right to

discovery on those issues has been recognized, as the plaintiff claims here. *Ibid.*; *Johnson v. Ct.*

*Gen. Life Ins. Co.*, 324 F. App'x 459, 466 (6th Cir. Apr. 7, 2009). The questions presented by the

present motion are whether the plaintiff must satisfy a condition before she can engage in discovery

on those issues, and if so, whether the plaintiff has satisfied it. The Court heard the parties'

arguments in open court on October 6, 2010 and now concludes that existing rules of procedure govern discovery in ERISA cases, just as other civil actions in the district courts. Under those rules, before a plaintiff may obtain discovery in an ERISA benefits action, the matters under inquiry must be relevant (within the meaning of Federal Rule of Civil Procedure 26(b)(1)) to the dispute raised in good faith by the suit papers (as required by Federal Rule of Civil Procedure 11(b)). The scope of such discovery is always subject to the Court's authority to limit inquiry under Rule 26(b)(2)(C). *See* Fed. R. Civ. P. 26(b)(1). Applying these principles, the Court will direct the defendant to answer some of the plaintiff's interrogatories, as outlined in detail below.

I.

According to the suit papers, the plaintiff was an employee of Herman Miller, Inc., which carried a group disability policy issued by the defendant and governed by ERISA. The plaintiff was a participant in this plan and sought long-term disability benefits following a diagnosis of degenerative disc disease, herniated disc, and discogenic low back pain for which she underwent surgery on October 31, 2006. She alleges that she has been taking strong pain medications since then and has been unable to work. The disability plan provides benefits for 24 months to an employee who is unable to perform her "own occupation," and for an extended period thereafter if the employee cannot perform any work for which she is suited. The plaintiff received benefits for 24 months following her surgery, but the defendant discontinued benefits based on a determination that the plaintiff would not be considered disabled from "any occupation."

The defendant allegedly based the decision to discontinue benefits on a functional capacity examination of the plaintiff performed on October 1, 2008 by a physician hired by the defendant.

The plaintiff disputes the conclusions reached by the examiner. She also argues that there was no substantial change in her condition and that her doctors supported her classification as disabled.

At some point during this process, the plaintiff applied for and received Social Security Disability benefits. She believes that the defendant either ignored or improperly discounted this evidence.

At another unspecified point during this administrative process, the defendant had the plaintiff's records reviewed by a physician from an organization the parties refer to as "MCMC," which allegedly performs over 50,000 medical reviews and 18,000 medical examinations for the insurance industry annually. The plaintiff notes that the review of her records cost $1,950, and she believes that MCMC may generate over $9 million of revenue from this defendant alone.

On August 26, 2009, the plaintiff filed a complaint in the Wayne County, Michigan circuit court against Hartford Life Insurance Company (later corrected to its proper name, defendant Hartford Life and Accident Insurance Company), alleging that the defendant had improperly denied her disability benefits against sufficient evidence of her disability. The plaintiff alleged that "[t]he only reasonable explanation for Defendant's denial of this claim is bias, self-dealing and/or a complete absence of due process." Compl. ¶ 18. The defendant removed the case to this Court on October 22, 2009.

The Court conducted a status conference and entered an order under Federal Rule of Civil Procedure 16 directing the parties to file cross motions on the administrative record to affirm or reverse the plan administrator's decision. The case management order stated, however, that if either party timely raised a procedural challenge, the Court would determine whether discovery was warranted and, if so, adjust the deadlines for the cross motions.

On May 5, 2010, the plaintiff filed a Notice of Procedural Challenge challenging the failure to produce "SIU records" (neither party defines this acronym), the conclusion of the functional capacity evaluation, and the potential bias from the relationship between MCMC and the defendant. The plaintiff asserts that the claim notes state "claim referred to SIU and accepted for investigation," but that the defendant failed to provide any records from SIU as part of the administrative record. Pl.'s Statement of Proc. Challenge at 4. The plaintiff also sent discovery requests to the defendant seeking information about the relationship between the defendant and its file reviewers, the claims made under the plaintiff's plan for the last ten years, and the individuals who performed an administrative review of the plaintiff's file. The defendant responded via a letter to plaintiff's counsel and refused to comply with the discovery requests, citing both ERISA-specific discovery rules and Federal Rule of Civil Procedure 26.

The present motion followed.

II.

The general rule in cases challenging the denial of employee benefits under ERISA section 502(a)(1)(B) is that the district court reviews the plan administrator's decision *de novo*, unless the plan gives the administrator discretionary authority to determine participants' eligibility for benefits, in which case the court must apply the highly deferential arbitrary and capricious standard of review. *Cox v. Standard Ins. Co.*, 585 F.3d 295, 299 (6th Cir. 2009). When applying either standard, the court may consider only evidence that was presented to the plan administrator and may not consider additional evidence outside the administrative record. *See Wilkins*, 150 F.3d at 615 (citing *Perry*, 900 F.2d at 966). Since no evidence beyond the administrative record would be considered, no discovery is required. Limiting review to the administrative record advances ERISA's primary goal

of "provid[ing] a method for workers and beneficiaries to resolve disputes over benefits inexpensively and expeditiously." *Perry*, 900 F.2d at 967.

However, in *Wilkins*, the court recognized that there were certain cases in which matters beyond the administrative record were relevant. In those cases, the district court may deem additional evidence appropriate, such as "when consideration of that evidence is necessary to resolve an ERISA claimant's procedural challenge to the administrator's decision, such as an alleged lack of due process afforded by the administrator or alleged bias on its part." *Wilkins*, 150 F.3d at 618. When new evidence is to be allowed on those narrow issues, prehearing discovery is also appropriate, but it "should be limited to such procedural challenges." *Id.* at 619.

Since *Wilkins*, discovery has been the exception rather than the rule in the mine run ERISA benefits case. Although the Sixth Circuit has not addressed the issue in a published opinion, in a series of unpublished decisions the court has stated that a plaintiff seeking discovery in an ERISA benefits case must make some sort of "predicate showing" of "an alleged procedural violation" as a condition of obtaining discovery, presumably to avoid allowing discovery as a matter of routine, in the interest of advancing the goal of inexpensive and expeditious dispositions. *Huffaker v. Metro. Life Ins.*, 271 F. App'x 493, 504 (6th Cir. Mar. 25, 2008); *see also Likas v. Life Ins. Co. of N. Am.*, 222 F. App'x 481, 486 (6th Cir. 2007); *Putney v. Med. Mut. of Ohio*, 111 F. App'x 803, 807 (6th Cir. 2004).

In another line of cases, the Sixth Circuit has recognized the relevance of the potential bias of a plan administrator that arises from the structural conflict of interest created by the administrator's dual roles of adjudicator and benefits payor; however, the court has held that the plaintiff has the burden of proof, and "conclusory allegations of bias" will not satisfy it. *Kalish v.*

*Liberty Mut./Liberty Life Assurance of Boston*, 419 F.3d 501, 508 (6th Cir. 2005); *see also Cooper v. Life Ins. Co. of N. Am.*, 486 F.3d 157, 165 (6th Cir. 2007) (noting that the plaintiff was required to show "significant evidence" of the conflict of interest and rejecting the plaintiff's bias argument because she "provided no evidence whatsoever" concerning the effect of the alleged conflict in her case); *Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 293 n.2 (6th Cir. 2005). Notably, in *Calvert*, the court lamented the *absence* of pretrial discovery: "The Court would have a better feel for the weight to accord this conflict of interest if Calvert had explored the issue through discovery. While Calvert's counsel asserted that it was his understanding that discovery is never permissible in an ERISA action premised on a review of the administrative record, an exception to that rule exists where a plaintiff seeks to pursue a decision-maker's bias." *Calvert*, 409 F.3d at 293 n.2.

The relevance of a plan administrator's potential conflict of interest in cases where the plan confers discretion on the administrator and judicial review employs a deferential standard was affirmed by the Supreme Court in *Met. Life Ins. v. Glenn*, 554 U.S. 105, 128 S. Ct. 2343 (2008). The Court found that "the fact that a plan administrator both evaluates claims for benefits and pays benefits claims creates the kind of 'conflict of interest'" a reviewing court should consider, 128 S. Ct. at 2348, but the extent and effect of that conflict depends on the facts of each case. The Court did not address the issue of pretrial discovery of the conflict, but it did state that lower courts should not invent or apply special rules when deciding these cases:

> Neither do we believe it necessary or desirable for courts to create special burden-of-proof rules, or other special procedural or evidentiary rules, focused narrowly upon the evaluator/payor conflict. In principle, as we have said, conflicts are but one factor among many that a reviewing judge must take into account. Benefits decisions arise in too many contexts, concern too many circumstances, and can relate in too many different ways to conflicts — which themselves vary in kind and in degree of seriousness — for us to come up with a one-size-fits-all procedural system that is likely to promote fair and accurate review. Indeed, special procedural

> rules would create further complexity, adding time and expense to a process that may already be too costly for many of those who seek redress.

*Glenn*, 128 S. Ct. at 2351. The Court also noted that its elucidation of the appropriate standard of review "does not consist of a detailed set of instructions" that courts must follow, and that conflicts of interest may weigh more heavily where the circumstances suggest more likelihood of bias in the plaintiff's case and less where the circumstances show procedural protections by the defendant to avoid bias. *Id.* at 2352, 2351.

In its first post-*Glenn* decision, albeit an unpublished one, the Sixth Circuit held that plaintiffs do not need to make a predicate showing of bias prior to receiving some discovery. *Johnson v. Ct. Gen. Life Ins. Co.*, 324 F. App'x 459 (6th Cir. Apr. 7, 2009). In that case, the court discussed the case law in the circuit, and then stated:

> Although Connecticut General argues that these cases should be interpreted to impose a threshold evidentiary showing of bias as a prerequisite to discovery under *Wilkins*, the Supreme Court's admonition in *Glenn* discouraging the creation of special procedural or evidentiary rules for evaluating administrator/payor conflicts of interest counsels against it. That does not mean, however, that discovery will automatically be available any time the defendant is both the administrator and the payor under an ERISA plan. . . . District courts are well-equipped to evaluate and determine whether and to what extent limited discovery is appropriate in furtherance of a colorable procedural challenge under *Wilkins*.

*Id.* at 466-67.

A survey of the district court decisions suggests that what constitutes a "colorable procedural challenge" remains unsettled. Some courts, through their magistrate judges, have interpreted this statement as eliminating any special threshold showing save that required by Rule 26. *Back v. Hartford Life & Accident Ins.Co.*, No. 09-14446, slip. op. at 5 (E.D. Mich. July 1, 2010); *Myers v. Prudential Ins. Co. of Am.*, 581 F. Supp. 2d 904 (E.D. Tenn. 2008). Another magistrate judge believes that the plaintiff still must make some showing as a condition of pretrial discovery. *Geer*

*v. Hartford Life & Accident Ins. Co.*, No. 08-12837, 2009 WL 1620402, at *5 (E.D. Mich. June 9, 2009).

This Court believes that existing rules of procedure provide district courts with means of addressing pretrial discovery issues in ERISA benefits cases so that the interests of economy, efficiency, accuracy, and fairness are all served. Disputes over the scope of discovery in such cases should be addressed in the context of existing rules and the cases interpreting them. No special rules or procedures are necessary or appropriate. However, when determining a discovery dispute, the Court must be mindful that *Wilkins* instructs courts to decide these cases as actions for review on an administrative record, intended to be expeditious and inexpensive, and must apply the existing rules accordingly. *See, e.g.*, Fed. R. Civ. P. 26(a)(1)(B)(I) (exempting such actions from initial disclosure requirements).

Rule 26 defines the scope of allowable pretrial discovery in terms of relevance:

Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . . For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.

Fed. R. Civ. P. 26(b)(1). Relevance is determined by the pleadings and other documents in the case that set out the parties' claims and defenses, but it is a broader concept in the context of discovery compared to evidentiary relevancy. *Oppenheimer Fund Inc. v. Sanders*, 437 U.S. 340, 350-51 (1978). However, Rule 26 also allows the Court to limit discovery that is unreasonably cumulative or burdensome, or where the potential benefits outweigh the burden of production. Fed. R. Civ. P. 26(b)(1) ("All discovery is subject to the limitations imposed by Rule 26(b)(2)(C)."); *Scales v. J.C. Bradford & Co.*, 925 F.2d 901, 906 (6th Cir. 1991).

Rule 16 requires the Court to issue a scheduling order in most civil actions, including ERISA benefits actions. *See* Fed. R. Civ. P. 16(b)(1). The order should address the issue of discovery and any limitations or modifications of the procedures in Rule 26. *See* Fed. R. Civ. P. 16(b)(3)(B)(ii). In this case, the Court's scheduling order required the plaintiff to file a statement of procedural challenge before discovery would be allowed. The procedural challenge is a "paper" that must be signed by the plaintiff's attorney, who thereby certifies that the challenge has "evidentiary support." *See* Fed. R. Civ. P. 11(b)(3). This procedure allows the Court to determine if the procedural challenge is "colorable," *Johnson*, 324 F. App'x at 467, and to assess whether "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C)(iii).

In this case, the plaintiff has alleged that the plan administrator was biased against the plaintiff because of its motivation to avoid paying a claim from its own coffers. The standard of review in this case presently is contested, with the defendant arguing that the arbitrary and capricious standard applies and the plaintiff contending that review should be *de novo*. If the former, the plan administrator's potential conflict of interest is relevant to whether it abused its discretion. *Glenn*, 128 S. Ct. at 2348. Discovery aimed at exploring the defendant's relationship with and motive for selecting the consultants and evaluators who provided opinions that the plaintiff was not disabled falls with the scope of Rule 26(b). If the standard of review is *de novo*, then the significance of the administrator's conflict of interest evaporates. But since the issue is unresolved and remains in the case, the discovery dispute must be decided.

The defendant has resisted discovery, arguing by way of objection that it is too broad and burdensome, and the plaintiff has not established her right to it. Usually, those issues are raised by a motion for a protective order under Rule 26(c), but a motion to compel under Rule 37 frames the issue adequately as well. The Court has "wide discretion" to limit discovery, and must balance the relative benefits and burdens. *Scales*, 925 F.2d at 906. "Although a plaintiff should not be denied access to information necessary to establish her claim, neither may a plaintiff be permitted 'to "go fishing" and a trial court retains discretion to determine that a discovery request is too broad and oppressive.'" *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007) (quoting *Marshall v. Westinghouse Elec. Corp.*, 576 F.2d 588, 592 (5th Cir. 1978)).

In her statement of procedural challenge and motion to compel discovery, the plaintiff presents the following theories of bias: (1) the defendant plan administrator both evaluates claims and makes decisions concerning the payment of benefits, and thus "has a direct financial stake in the outcome of this case," Mot. to Compel at 3; (2) the defendant relied solely on the reviewer's conclusions from the October 1, 2008 functional capacity evaluation and failed to consider other details and observations that the plaintiff experienced high pain levels throughout the short testing period, including during the seated portions, as well as evidence from her doctors and the Social Security Administration in reaching its conclusion that the plaintiff could perform sedentary work; (3) the defendant failed to produce records from SIU, which suggests that the plaintiff did not receive a full and fair review; (4) the defendant had the plaintiff's records reviewed by MCMC, an organization that provides over 50,000 independent medical reviews for the insurance industry annually, and paid MCMC $1950 for this review; (5) the defendant and MCMC have a particularly close working relationship, as evidenced by the special referral form created specifically for this

organization, and MCMC would have an incentive to provide favorable reviews for the defendant;

and (6) the defendant terminated the plaintiff's benefits even though there had not been a substantial

change in circumstances, her doctors continued to conclude that she was disabled, and she had been

approved for Social Security disability benefits (following the defendant's recommendation that she

seek out these benefits). In support of these allegations, the plaintiff has provided a California

Market Conduct Examination, which the plaintiff describes as "an examination of this Insurer's

claims handling practices [which] has been strongly criticized during a market conduct

examination." *Id.* at 5 & Ex. E, California Market Conduct Examination.

The plaintiff asks the Court to order the defendant to answer the following questions:

Interrogatory No. 1: For each doctor, file reviewer, or surveillance company used for
file review in this claim, please state the following:
   a. The name of each physician, reviewer, surveillance company or
   vendor involved in this claim;
   b. Whether the relationship of each individual or entity identified
   above is subject to a contract;
   c. The fees paid to each physician, reviewer or contractor (including
   any entity through which they are utilized) in this matter;
   d. The fees paid to each physician, reviewer or contractor (including
   any entity through which they are utilized) for each of the past three
   years;
   e. The number of times Defendant has utilized each physician,
   reviewer or contractor;
   f. The number of times the physician, reviewer or contractor opinion
   has supported a decision to deny benefits;
   g. A complete list of documents provided to each individual or entity
   identified above.

Interrogatory No. 2: Please state the total number of claims made under the subject
disability plan for the last ten (10) years with respect to those, please state the
following:
   a. number of claims approved;
   b. total amounts paid for LTD benefits under the plan;
   c. the number of claims denied under the plan; and
   d. the amount expended by Defendant on the individuals and entities
   identified above for each claim that was denied.

Interrogatory No.3: Please state the names of all persons who performed any administrative review of the Plaintiffs claim. With respect to those persons listed, please state the following:

    a. whether the person is employed by Defendant and

    b. credentials the person has with regard to said review.

Mot. to Compel, Ex. A, Pl.'s First Interrogatories.

The defendant asserts that the plaintiff has presented nothing more than mere allegations that do not support discovery in this case, points out that the plaintiff's treatment history and Social Security findings are already included in the record and do not support the need for additional discovery, and argues that the plaintiff has failed to demonstrate how the California market study — which was conducted several years before the plaintiff's claim and relied on California laws and regulations — is relevant here. The defendant also argues that much of the discovery would be burdensome to assemble, although that argument appears to be directed primarily at question 2.

The Court finds that the discovery sought by the plaintiff is relevant to the issues in this case. The plaintiff has made a good-faith and articulate assertion of a potential conflict of interest in its statement of procedural challenge, certified under Rule 11(b), and that is all that is required by Rule 26(b) to make the issue "relevant." The Sixth Circuit has stated that evidence relating to the relationship between the plan administrator and its consultants and evaluators is relevant to the question of abuse of discretion by the administrator. *DeLisle v. Sun Life Assur. Co. of Canada*, 558 F.3d 440, 445 (6th Cir. 2009) (stating that "our own Court has observed that when a plan administrator both decides claims and pays benefits, it has a 'clear incentive' to contract with consultants who are 'inclined to find' that a claimant is not entitled to benefits" (citing *Kalish*, 419 F.3d at 507)). The court has stated that statistical evidence showing a consultant's proclivity to find nondisability may be relevant. *Kalish*, 419 F.3d at 508. The use of in-house versus independent

consultants also is a relevant consideration. *Helfman v. GE Group Life Assur. Co.*, 573 F.3d 383, 393 (6th Cir. 2009); *Moon v. Unum Provident Corp.*, 405 F.3d 373, 381-82 (6th Cir. 2005) (stating that "when a plan administrator's explanation is based on the work of a doctor in its employ, we must view the explanation with some skepticism").

The information sought by questions 1 and 3 have a direct bearing on these issues. The defendant has not argued that the burden of producing that information is great or the information is inaccessible. Most of the information sought is specific to the present claim and presumably can be found in the claim file. The information concerning how frequently a consultant has been used and the compensation paid should be readily available, since much of that data is required to be reported to tax authorities. Question 1(f), which asks how often a consultant supports denial of a claim, may be somewhat difficult to assemble. However, that information is highly relevant to the plan administrator's exercise of discretion. *See Kalish*, 419 F.3d at 507-08 ("This court has similarly observed that a plan administrator, in choosing the independent experts who are paid to assess a claim, is operating under a conflict of interest that provides it with a 'clear incentive to contract with individuals who were inclined to find in its favor that [a claimant] was not entitled to continued [disability] benefits.'" (quoting *Calvert*, 409 F.3d at 292)). The Court finds that the potential benefits that may be realized from this discovery and its illumination of the decisional process outweigh the burdens of production that the defendant must bear.

Question 2 seeks information about all claims made under the plaintiff's plan by any individual in the past ten years. The defendant states that it does not track that information and assembling it would require a file-by-file review. The plaintiff has not explained why she needs this information or how it relates to the plan administrator's exercise of discretion in her case. Whatever

the potential benefit of this discovery is, it is surely outweighed by the burden and cost of production that would be incurred by the defendant.

III.

The Court finds that the discovery sought in this case is relevant to the issues raised by the suit papers, and the potential usefulness of the information sought by the plaintiff in questions 1 and 3 of its interrogatories outweighs the burden of production on the defendant.  The relevance of the information sought in question 2 is marginal and the burden of production is great.

Accordingly, it is **ORDERED** that the plaintiff's motion to compel discovery [dkt #25] is **GRANTED IN PART AND DENIED IN PART**.

It is further **ORDERED** that the defendant must furnish to the plaintiff answers to interrogatory questions 1 and 3 on or before **November 9, 2010**.

It is further **ORDERED** that the scheduling order is **AMENDED** as follows: the parties shall file their cross motions on the administrative record and joint appendix **on or before November 30, 2010**.  The balance of the scheduling order remains in full force and effect.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   October 12, 2010

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on October 12, 2010.

s/Teresa Scott-Feijoo
TERESA SCOTT-FEIJOO

---